BOOTH, Judge.
This cause is before us on appeal from the summary final judgment of the Circuit Court, Leon County, holding appellee entitled to credit for sales tax paid pursuant to Section 212.17(2), Florida Statutes (1977). The question presented is whether appellee is disqualified from receiving the credit or refund authorized by Section 212.17(2), as contended by appellant, because of the procedures followed on the sale, repossession, and resale of the tangible personal property involved.[1]
Florida Statutes (1979), Section 212.17(2), provide:
A dealer who has paid the tax imposed by this chapter on tangible personal property sold under a retained title, conditional sale, or similar contract, or under a contract wherein the dealer retains a security interest in the property pursuant to chapter 679, may take credit or obtain a refund for the tax paid by him on the unpaid balance due him when he repossesses (with or without judicial process) the property, in the same manner as he may obtain a credit or a refund under subsection (1) of this section upon the return of purchases. When such repossessed property is resold, the sale is subject in all respects to the tax imposed by this chapter.
The case was tried to the court on a stipulated statement of facts under which *1161 the parties agreed that appellee, a “dealer” under Section 212.17, Florida Statutes (1977), in, and seller at retail of, mobile homes, properly collected and remitted sales taxes due under Chapter 212, Florida Statutes (1977), on the initial sales of mobile homes and, again, on the resale after repossession from a defaulting purchaser of mobile homes.
Attached to the stipulation is a “Retail Installment Contract-Mobile Home-Security Agreement,” which the parties agree is a true copy of the instrument typically used by appellee in making the sales during the period of time in question. The contract for sale describes the seller as the “Secured Party” and provides:
As security for the payment of the Total Payments, Purchaser hereby grants a Security Interest in Vehicle and in the proceeds thereof to Seller and agrees that Seller is to have the rights of a Secured Party under the Uniform Commercial Code with respect thereto and with respect to this Contract. Purchaser agrees not to remove Vehicle permanently from the filing district in which Purchaser’s address (above) is located without the written consent of Seller.
After setting out the price, down payment, and number and amount of monthly installments to be paid, the agreement provides:
DESCRIPTION OF SECURITY INTEREST: Seller has a security interest under the Uniform Commercial Code in Vehicle and proceeds thereof to secure payment and performance of Purchaser’s obligations under Retail Instalment Contract, and any additional indebtedness represented by amounts which may be expended by Seller (1) in release or discharge of taxes, liens and encumbrances and (2) to procure required physical damage insurance on Vehicle as provided in this Retail Installment Contract.
The contract further states: “This contract is hereby accepted by the Seller and assigned under the terms of the assignment on the reverse, to COMMERCIAL CREDIT CORPORATION.” On the reverse side, the contract provides: “Seller shall have a Security Interest in the Vehicle until all amounts owing hereunder are fully paid in cash. This contract may be assigned by Seller or the payment thereof renewed or extended without passing title to Vehicle to Purchaser,” and, under the “SELLER’S ASSIGNMENT,” provides that the seller transfer the contract and all of the seller’s right, title, and interest thereto to Commercial Credit.
The agreement between the seller and the credit company entitled “Repurchase Agreement,” also attached to the parties’ stipulation, and this agreement, as well as other verbal agreements between the seller and the financing company, are summarized by the parties in their stipulation as follows:
That during the period March 1, 1973 through March 31,1976, Plaintiff entered into financing agreements with certain financial institutions; in most instances, Commercial Credit Corporation. These agreements provided that the financial institution would purchase finance papers from Plaintiff with recourse on mobile homes sold by Plaintiff on credit. The recourse agreement and other verbal agreements with the finance institutions provided, inter alia, that in the event of a default, Plaintiff would be obligated to attempt to find another purchaser for the mobile home.
In those instances where no new purchasers could be found within the time period allowed by the agreements, Plaintiff re-purchased the contract from its financing source, re-acquired legal title (which had been issued in the purchaser’s name), and was allowed a refund or tax credit under Section 212.17(2), Florida Statutes.
In those instances where a new purchaser could be found within the time period allowed by the agreements, Plaintiff handled all aspects of the new sale, had the title transferred to the new purchaser; but was denied a refund or tax credit taken pursuant to Section 212.-17(2), Florida Statutes.
*1162 In either situation, tax is collected and remitted to Defendant in connection with the subsequent sale or transfer of the mobile home, (emphasis added)
The parties agreed by stipulation that in those instances where appellee repurchased the contract of a defaulting buyer from appellee’s financing source and reacquired the legal title prior to reselling the mobile home to a second purchaser, the appellant allowed a refund or tax credit under Section 212.17(2). However, in those instances where appellee found a second purchaser for the repossessed mobile home but had title transferred directly from the defaulting first purchaser to the new purchaser, with the new purchaser assuming the contractual obligation to make payments to the financing source, the refund or credit was denied. The same contract, assignment, and financing agreement were entered into in both instances.
Thus, the Department of Revenue (DOR) determined that in order to claim the credit or refund where financing arrangements had been made, the dealer had to first repurchase the contract from the financing agent and reacquire the title in the dealer’s name before resale to the second purchaser. We are not here concerned with the validity of the appellant’s rule requiring this particular form of transaction since it was not in effect at the time of the assessments here.[2] The statute itself does not preclude financing arrangements or require that one using such arrangements follow a particular form of transaction beyond that stated as to the type of contracts required under the statute.
The order of the trial court, after reciting the stipulation of the parties, ruled in part as follows:
This Court is of the opinion that DEPARTMENT OF REVENUE’S interpretation of Section 212.17(2), Florida Statutes, as it applies to MOBILE HOME INDUSTRIES, INC., is too narrow and amounts to a triumph of form over substance which was never intended by the Legislature. First, it should be noted that MOBILE HOME INDUSTRIES, INC. utilized the same form of sales contract for all its sales transactions. If, as DEPARTMENT OF REVENUE argues, this contract was not the type contemplated by the statute, then MOBILE HOME INDUSTRIES, INC. would not have been entitled to the refunds or credits as granted by DEPARTMENT OF REVENUE in the situations wherein title was re-acquired from the initial purchaser in default. Additionally, the contract in question provides for the retention of a security interest by the seller (MOBILE HOME INDUSTRIES, INC.).
We agree with the trial court that the contracts for sale of the mobile homes are, in fact, contracts which retain a security interest in the seller. This is expressly provided in the document itself. Thus, at the time of the initial sale, the dealer has a retained security interest. Nothing in the statute precludes the assignment of that interest for purposes of obtaining financing. It is also recognized by DOR that the seller/dealer, after the assignment, has a continuing obligation to the financial institution to obtain full payment of all contracts assigned to the institution, either by making payment itself or by obtaining a purchaser to assume payments on defaulted contracts.[3] No basis appears in the statute, and DOR has presented none, which can justify the distinction made and denial of credit or refund in those instances where the dealer is able to find a second purchaser within the’ period of time (90 days) allowed by the assignment and to *1163 transfer title directly from the defaulting purchaser to the subsequent purchaser.
We agree with appellant that, in order to receive a credit or refund, the dealer must show that the requirements of the statute are met. It is also clear that the statute must be construed to effectuate legislative intent which is to allow the dealer credit or refund for the amount of sales tax attributable to the unpaid balance of the sale.[4] The Legislature is not required to allow a credit or refund under the circumstance, but has seen fit to do so. National Brands Tire Company v. Department of Revenue, 383 So.2d 257 (Fla. 3d DCA 1980). Further, the Legislature has determined that the dealer, rather than the initial purchaser or the financing agency, is entitled to apply for the credit or refund.[5] Little purpose is served, therefore, by appellant’s argument that the credit or refund is a “windfall” to the dealer because the dealer only collected the tax from the purchaser who subsequently defaulted. We agree with the appellant’s suggestion that legislative intent in enactment of the statute was to give relief to dealers who suffer a loss by reason of having to repossess and resell merchandise after a buyer defaults, but not with appellant’s further assertion that the statute should be read to require the dealer prove a monetary loss or financial detriment resulting from a transaction beyond, or in addition to, the collection of “excess” sales taxes.
The statutory requirements are met in the instant case, and the trial court correctly ruled appellee entitled to the credit or refund. Accordingly, the judgment below is affirmed.[6]
NIMMONS, J., concurs.
WENTWORTH, J., dissents with written opinion.

. On appeal, the Department of Revenue contends: (1) credit or refund statute must be strictly construed against taxpayer; (2) appellee did not sell the property under a retain title, conditional sale, or similar contract; (3) appel-lee did not sell the property under a contract wherein the dealer retains a security interest in the property; (4) the Legislature did not intend to grant credit to a dealer who does not carry the balance due as accounts receivable but has assigned the contract for value; (5) a denial of credit or refund will not result in double taxation; and (6) order below establishes error in the lower court’s ruling.

. Rule 12A-1.12, Repossessed Merchandise and Bad Debts, adopted by the Department of Revenue after the date of assessments here, provides, in case of repossessions, that: "In those instances where the tangible personal property was financed by a third party, the dealer must show that he repurchased the contract before applying for a tax credit under this paragraph.”

. To that end, the appellee retains paper title to the mobile home and a power of attorney signed by the purchaser so that appellee can effectuate transfer of title to a subsequent purchaser in the event of default.

. Volume 1, Florida State and Local Taxes, p. 683:
The Rules allow dealers to obtain a refund or take a credit on a subsequent sales tax return in situations in which dealers repossess property that was sold under a retain title, conditional sale, or similar contract. The refund or credit is computed by multiplying the total sales price paid times the ratio of the unpaid balance of the taxable sales price divided by the total sales price as reflected in the sales contract. The subsequent sale of the repossessed property is subject to tax.

. Volume 1, Florida State and Local Taxes, p. 683 at n. 93:
There is no sales tax refund requirement to the defaulting purchaser, because apparently the purchaser is not deemed to have paid the prorata portion of the sales tax on the unpaid balance of the sales price. The dealer must claim his refund or credit within 12 months following the month in which the property was repossessed. Rule 12A-1.12(2)(a).

.Judge Nimmons replaced Judge McCord, now retired, on this panel. Although not present at oral argument, Judge Nimmons has listened to the tape recording of the arguments.